## Felegy Unemployment Compensation Case.

Argued October 22, 1945. Before BALDRIGE, P. J., RHODES, HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*Isaac J. Silin,* with him *Brooks, Curtze & Silin,* for appellant.

*R. Carlyle Fee,* Assistant Special Deputy Attorney General, with him *Charles R. Davis,* Special Deputy Attorney General, and *James H. Duff,* Attorney General, for appellee.

OPINION BY RENO, J., March 5, 1946:

This appeal follows the pattern of *Sturdevant Unemployment Compensation Case,* 158 Pa. Superior Ct. 548, 45 A. 2d 898, and is governed by the same principles.

The board found that the claimant, Dorothy Felegy, a skilled worker, left her employment on February 5, 1944, and joined her husband who was in the armed forces and stationed in a camp near Alexandria, La. The claimant lived in Alexandria, a city of 75,000 population during the war and 35,000 in peace. It has wholesale and retail businesses, but no industries. She registered for work in the area. Work is available for female workers, but not for process workers such as claimant, and employers were reluctant to hire persons in claimant's status.

The findings relating to the population of Alexandria, and the character of its business enterprises, support the conclusion of the board: "In the absence of testimony that no employment opportunities existed or that no employers were willing to hire persons in claimant's status, it can only be concluded that the test of availability has been met."

This case must be distinguished from *Teicher Unemployment Compensation Case,* 154 Pa. Superior Ct. 250, 35 A. 2d 739, which was decided upon a finding that the claimant was living at *the army post* near Alex-

andria and thereby removed herself from the labor market.

The record contains a letter written at Girard, Pennsylvania, on August 17, 1944, by claimant, after her return to her home, in which she states, inter alia, ". . . I droped my claim, yet while I was down Alexandria, La. I signed for compensation cause I couldn't get a job. I drawed one check for $9.00. Than I couldn't get any more, something went wrong I guess. They had hearings, but I didn't go cause, later on I got myself a housework job. . . . I really think its best for me to drop the whole thing." The letter was addressed: "Dear Secretary" and it was stamped: "Received August 21, 1944, Board of Review." The referee found that the letter was sent to "Miss Brinig, Employment Manager of the Bliley Electric Company." The board vacated the referee's findings, and made its own findings which contain no reference to the letter or to claimant's withdrawal of her claim.

Notwithstanding the validity of her claim, the letter should have been made the subject of a finding of fact. It raises two important questions. First, did claimant actually withdraw her claim and, if so, why did the board on its own motion review and reverse the decision of the referee and adjudicate a discontinued claim; and second, when did claimant secure work as a domestic, and have benefits been allowed subsequent to that date? [1]

---

[1] To facilitate our review on appeal, the record, or the history of the case prepared by counsel for the bureau or the board, should contain a clear statement of the following: (a) A calculation of the wages earned during the base-year; (b) the method whereby the amount of the weekly benefits and the duration of the benefit period were ascertained; (c) the period during which benefits are payable, after giving effect to the waiting period or other deferring periods; (d) the amounts *actually* paid to claimant and the period covered by the payments; (e) the balance, if any, of the unpaid benefits; and (f) the amount of money actually in controversy upon the appeal.

The record contains no explanation of these matters, and we regard them pertinent to the issue of claimant's compensability.

The decision is vacated, and the record is remanded to the board for further proceedings consistent with this opinion.